UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cr-00134-FDW-DSC

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) ORDER |
| (5) JAMES BAXTON | ) |
| (19) CYNTHIA GILMORE, and | ) |
| (21) PEDRO GUTIERREZ | ) |
| | ) |
| | ) |

THIS MATTER is before the Court upon Defendant Cynthia Gilmore's Motion Requesting the Current Presiding Judge to Recuse himself Due to Conflict of Interest (Doc. No. 1499). After reviewing the motion and supporting documents, the Court DENIES the motion for the reasons stated herein.

While conducting a pretrial status conference on May 1, 2018, the undersigned disclosed to the parties his recusal in the case of United States v. Cureton, *3:14-cr-00229-MOC-1*. As was explained to the parties in open court, this recusal occurred following law enforcement's discovery of the undersigned's picture in defendant Jamell Cureton's Mecklenburg jail cell. On January 12, 2015, federal agents raided Cureton's cell as part of a broader investigation into the 2014 murders of Doug and Debbie London. Five months before the Londons were killed, Cureton was charged with attempted robbery of the Londons' mattress store. It is believed the Londons were killed to prevent their testifying against Cureton and his co-defendants. The 2015 raid of Cureton's cell also uncovered photographs of retired Superior Court Judge Richard Boner and Charlotte City Attorney Bob Hagemann. Judge Boner, City Attorney Hagemann, and the undersigned were all

1

placed under a low level protective watch following the raid. This event received significant media coverage in Charlotte and the surrounding areas, appearing in print, on television, and on the internet.[1] The undersigned concluded that because a credible threat existed, and because this threat had been highly publicized, there was an appearance of impartiality and a reasonable basis to question the undersigned's ability to remain impartial. In the interests of justice, the undersigned determined that his recusal was warranted to avoid questions of impartiality, or accusations of personal bias, and to ensure a fair trial for the defendant. Here, Defendant Gilmore contends that the undersigned's recusal in Cureton somehow necessitates his recusal because the Defendants in both the Cureton matter and the case at bar are members of the United Blood Nation (UBN). The Court addresses Defendant Gilmore's arguments below.

## I. LEGAL STANDARD

Disqualification of a judge is governed by 28 U.S.C. § 455, which provides in pertinent part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> > (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> >
> > (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served

---

[1] See Michael Gordon, *Apparent threat prompts protection of Charlotte judges, city attorney*, THE CHARLOTTE OBSERVER (Feb. 22, 2015, 1:00 AM) https://www.charlotteobserver.com/news/local/crime/article10895243.html. This article, which was also published to WBTV's website, recounts the events of the FBI raid on Jamell Cureton's jail cell. The article notes that the raid was spurred by the killings of Doug and Debbie London, who according to Mecklenburg County Assistant District Attorney Monique Holman were killed to keep Doug London from testifying against Cureton, Nana Adoma, and David Lee Fudge. While the article states that the discovery of the undersigned's photograph in the jail cell was only considered a low-level security threat, it also broadcasts that the U.S. marshals spent the night parked in the undersigned's home driveway in the week following the raid.

>during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it....

In short, recusal is appropriate whenever there exists a genuine question concerning a judge's impartiality or personal bias. See Liteky v. United States, 510 U.S. 540, 552 (1994). This question of impartiality is subject to an objective standard whereby recusal is required if an objective observer would reasonably question the judge's impartiality. Id. at 564. When no reasonable basis exists for questioning a judge's impartiality, however, it is improper for the presiding judge to recuse himself. United States v. Glick, 946 F.2d 335, 336–37 (4th Cir.1991). In evaluating whether a personal bias of prejudice exists, "[m]ore frequently it is said that a claim of `personal bias and prejudice' exists whenever the affiant is able to state facts supporting his reasons for the alleged bias and prejudice. Conclusory allegations charging the judge with improper conduct do not constitute the required `statement of facts' and therefore cannot justify disqualification." Duplan Corp. v. Deering Milliken, Inc., 400 F. Supp. 497, 514 (4th Cir 1975) (citations omitted). "Alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." Shaw v. Martin, 733 F.2d 304, 308 (4th Cir. 1984) (citing United States v. Grinnell Corp., 384 U.S. 563, 583 (1966)). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. U.S., 510 U.S. 540, 554 (1994). Ultimately, a motion made pursuant to section 455 is subject to the sound discretion of the judge. In re Virginia Elec. & Power Co., 539 F.2d 357, 369 (4th Cir.1976).

## II. ANALYSIS

**A. There is neither the appearance of impartiality nor any evidence showing that the Court's impartiality might reasonably be questioned.**

Defendant Gilmore contends there is "significant inconsistency" in the undersigned's recusal in Cureton and his refusal to recuse here, stating that there is a reasonable basis to question the undersigned's impartiality here because of his recusal in Cureton. (Doc. No. 1499, p. 2). Such argument is wholly without merit. The differences between Cureton and this case are readily apparent. Most significantly, the Court is aware of no threats whatsoever having been directed towards the undersigned in connection with this case. No Defendant in this present matter, nor any third party, has attempted to threaten or intimidate the undersigned in any fashion. Furthermore, Jamell Cureton is not a party to this case. The only link between Cureton and Defendants, to the Court's knowledge, is their affiliation with the UBN.[2] Defendant Gilmore argues this shared affiliation compromises the ability of the Court to remain impartial in this proceeding. But such an attenuated connection cannot form a reasonable basis for questioning a judge's impartiality. Moreover, there were no indications in the Cureton case that Jamell Cureton's threats towards the undersigned were sanctioned by UBN leadership or were related to his UBN membership in anyway. Accordingly, while there was a reasonable basis to question the undersigned's impartiality or personal bias concerning Jamell Cureton, there is no reasonable basis here to question the undersigned's impartiality concerning the UBN as a whole or these Defendants in particular.

---

[2] The Court notes that while the defendants in Cureton and the Defendants here are all UBN members, they are, however, members of different "sets." The Cureton defendants belong to the "G-Shine Bloods" set while the Defendants here identify with the "Nine Trey Gangsters" set.

In fact, if the Court were to adopt Defendant Gilmore's flawed logic, the undersigned would be compelled to recuse himself in virtually every matter involving the UBN in perpetuity. Indeed, any gang or other criminal enterprise could essentially immunize itself entirely from a judge, or judges, upon the issuance of a threat from any single member. Section 455 does not require or intend such a result.

In her brief, Defendant Gilmore also cites to the Fourth Circuit's unpublished decision in United States v. Hairston, 38 F. App'x 884 (4th Cir. 2002). Hairston, however, lends no support to Defendant's argument. There the Fourth Circuit found that the district judge did not err in refusing to recuse himself after being threatened by the defendant because the judge determined the threats were not credible. Id. at 886. The Fourth Circuit further noted that "[w]hile a defendant's alleged death threat against a judge may, in some cases, sufficiently raise the specter of partiality to warrant the judge's recusal, recusal is not automatically required simply because the trial judge becomes aware of the threats." Id. Other circuits have similarly interpreted 28 U.S.C. § 455. See United States v. Yu-Leung, 51 F.3d 1116, 1120 (2d Cir. 1995) ("despite [the judge's] knowledge of [the defendant's] alleged threat, we would be hard pressed to say that there exists the kind of basis … requiring the judge's recusal[.]"); see also United States v. Greenspan, 26 F.3d 1001, 1006 (10th Cir. 1994) ("[t]his is not to say that all death threats against a judge will mandate that judge's recusal under Section 455."); see also United States v. Dehghani, 550 F.3d 716, 721 (8th Cir. 2008) ("Judges are not required to recuse themselves any time they are threatened."). What is clear from the case law, and section 455, is that recusal is not dependent on merely whether a threat exists, but rather whether there is an objective, reasonable basis for questioning the judge's impartiality. While it was apparent in Cureton that the threat Cureton

5

posed raised the specter of impartiality to warrant the undersigned's recusal there, no such threat and no such basis for questioning the Court's impartiality exists here.

**B. Recusal here could inappropriately encourage judge-shopping.**

During the pretrial conference on May 1, 2018, the undersigned in refusing to recuse himself also voiced his concern that such a decision could encourage judge-shopping. Defendant Gilmore, in her brief, dismisses the undersigned's concerns, thereby ignoring the law in this circuit and circuits throughout the country. See United States v. Owens, 902 F.2d 1154, 1156 (4th Cir. 1990) ("[p]arties cannot be allowed to create the basis for recusal by their own deliberate actions. To hold otherwise would encourage inappropriate 'judge shopping.'"); see also In re Basciano, 542 F.3d 950, 957 (2d Cir. 2008) ("[r]equiring a judge to recuse himself because the defendant, in an attempt to change judges, has plotted or threatened to kill the judge would provide any defendant who wanted a new judge with an effective, if in some cases dreadful, method to achieve that end. A defendant cannot be permitted to use such a plot or threat as a judge-shopping device.") see also United States v. Greenspan, 26 F.3d 1001, 1006 (10th Cir. 1994) ("if a judge concludes that recusal is at least one of the defendant's objectives (whether or not the threat is taken seriously), then section 455 will not mandate recusal because that statute is not intended to be used as a forum shopping statute."); see also United States v. Beale, 574 F.3d 512, 519 (8th Cir. 2009) ("defendants are not permitted to use such a plot or threat as a judge-shopping device.") (internal citations omitted). The Court remains convinced that judge-shopping is an important concern, and if the undersigned were to recuse himself here based solely upon his recusal in Cureton such a decision could inappropriately encourage and facilitate judge-shopping in this district and throughout the circuit. The Court declines the invitation to set such a precedent.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion Requesting the Current Presiding Judge to Recuse himself Due to Conflict of Interest (Doc. No. 1499) is DENIED. The Court determines there is no objective, reasonable basis to doubt the impartiality of the undersigned in this matter or to doubt that justice would be done absent recusal. Accordingly, for the foregoing reasons Defendant Gilmore's motion (Doc. No. 1499) is DENIED.

IT IS SO ORDERED.

Signed: June 1, 2018

Frank D. Whitney
Chief United States District Judge