UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:17-CR-00134-FDW-SCR

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| JAMES BAXTON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release. (Doc. No. 3268.) The United States responded, (Doc. No. 3464), Defendant timely replied (Doc. Nos. 3545, 3553, 3571), and this matter is ripe for ruling. For the reasons set forth below, Defendant's Motion is **DENIED**.

## I. BACKGROUND

On March 13, 2018, Defendant was named in a seventy two count First Superseding Bill of Indictment ("Indictment") filed in the Western District of North Carolina. (Doc. No. 1941, p. 13.) Defendant is one of eighty three named individuals affiliated with the gang enterprise United Blood Nation ("UBN") (Id., pp. 3–13.) The Indictment charged Defendant with Conspiracy to Participate in Racketeering Activity – RICO Conspiracy, (Count 1s), in violation of 18 U.S.C. § 1962(d). (Id., p. 3.)

On May 17, 2018, a federal grand jury found Defendant guilty of Count 1s. (Id., p. 13.) On the same day, the jury also returned a Special Verdict, (Doc. No. 1566), for forfeiture of the following property: "[a]pproximately $6,268.15 in funds seized in or about May 17 from an inmate account held by or for the benefit of [Defendant], Inmate 95A3238, at the New York Department of Corrections." (Id.)

1

On November 23, 2021, Defendant submitted a request to the warden for a reduction in his sentence. (Doc. No. 3268-1, p. 2.) The warden denied his request on December 27, 2021. (Doc. No. 3464-1.) On January 4, 2022, Defendant filed a pro se Motion for compassionate release under 18 U.S.C. § 3582. (Doc. No. 3268.) Defendant is presently incarcerated at USP Canaan, and his projected release date is November 6, 2038. See https://www.bop.gov/inmateloc (last visited July 19, 2024).

## II. STANDARD OF REVIEW

Section 603(b) of The First Step Act of 2018, as amended 18 U.S.C. § 3582(c)(1)(A), permits a defendant to seek a modification of his sentence from the Court for "extraordinary and compelling reasons" if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018). Prior to 2018, a court could only act to reduce a defendant's sentence for extraordinary and compelling reasons if the Bureau of Prisons filed a motion seeking that relief.

If a defendant has administratively exhausted a claim for release (or the Government does not contest the exhaustion requirement),[1] the district court generally conducts a two-step inquiry when deciding whether to reduce a defendant's sentence under Section 3582(c)(1)(A). United States v. Bond, 56 F.4th 381, 383 (4th Cir. 2023). First, the court determines whether the defendant is eligible for a sentence reduction. "A defendant is eligible if the court finds 'extraordinary and compelling reasons warrant such a reduction.'" Id. (quoting § 3582(c)(1)(A)(i); citing United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021)). "[D]istrict courts are empowered to consider

---

[1] United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021) (recognizing the exhaustion requirement in § 3582(c)(1)(A) is not jurisdictional, and it may be waived or forfeited).

any extraordinary and compelling reason for release that a defendant might raise." United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (internal alterations and citations omitted).

"Second, the court considers 'the factors set forth in § 3553(a) to the extent that they are applicable.'" Bond, 56 F.4th at 384 (quoting 18 U.S.C. § 3582(c)(1)(A)); citing Kibble, 992 F.3d at 331. Section 3553(a) requires the court to "impose a sentence sufficient, but not greater than necessary" to comply with the basic aims of the statute. In considering whether a reduced sentence is warranted given the applicable § 3553(a) factors, the court considers, among others, "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" the kinds of sentences available and sentencing ranges; and "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a)(6) (2018). Notwithstanding the existence of "extraordinary and compelling reasons," the court retains the discretion to deny a defendant's motion after balancing the applicable 18 U.S.C. § 3553(a) factors. United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) ("if a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction").

The Government submitted a supplemental exhibit documenting the warden's denial of Defendant's motion for compassionate release, (Doc. No. 3464-1), and the Government does not contest that Defendant exhausted his administrative remedies. (Doc. No. 3464, p. 3.) Thus, the Court's analysis turns to whether Defendant presents extraordinary and compelling reasons supporting his release or sentence reduction in light of the applicable § 3553(a) factors.

3

III. ANALYSIS

Defendant contends he meets the criteria for extraordinary and compelling reasons under "Medical Circumstances of the Defendant," "Victim of Abuse," and "Other Reasons." See generally U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2023). First, Defendant states he suffers from sarcoidosis and this ailment places him at an unknown risk if he were to contract COVID-19. (Doc. No. 3268-1.) Second, Defendant contends he is a victim of abuse at the hands of correction officers[2] at Metropolitan Detention Center ("MDC") Brooklyn forcing him to sell illegal drugs and setting him up with contraband. (Doc. Nos. 3545, 3553.) Third, Defendant argues other conduct and ailments including a 2015 mental illness diagnosis, a K-9 attack, and a slip and fall support compassionate release. (Doc. Nos. 3268, 3553.) Fourth, Defendant contends if he were sentenced today, he would be in category V, not VI. Defendant argues these alone or in combination counsel in favor of a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A). Regarding the § 3553(a) factors, Defendant contends the completion of ten educational courses, denouncement of UBN membership, advocacy for peace and nonviolence, four inmate letters of support, and a sentencing disparity between himself and a codefendant warrant a sentence reduction. For the following reasons, the Court disagrees on each issue.

**A. Extraordinary and Compelling Circumstances**

First, Defendant argues compassionate release is warranted because his sarcoidosis constitutes an "extraordinary and compelling" circumstance as it places him at unknown, and potentially increased risk if he were to contract COVID-19. Defendant also tangentially refers to

---

[2] See Press Release, United States Attorney's Office Eastern District of New York, Ex-Federal Correction Officer Pleads Guilty to Taking Bribes in Exchange for Smuggling Contraband into Federal Jail in Brooklyn (Jan. 11, 2024), https://www.justice.gov/usao-edny/pr/ex-federal-correction-officer-pleads-guilty-taking-bribes-exchange-smuggling-0; see also Press Release, United States Attorney's Office Eastern District of New York, Ex-Federal Correction Officer Pleads Guilty to Taking Bribes in Exchange for Smuggling Contraband into the Metropolitan Detention Center in Brooklyn (Mar. 20, 2023), https://www.justice.gov/usao-edny/pr/ex-federal-correction-officer-pleads-guilty-taking-bribes-exchange-smuggling.

two inhalers he is issued when speaking about his sarcoidosis and COVID-19. For the following reasons, Defendant's argument is unpersuasive.

The current policy statement permits the Court to find "extraordinary and compelling" reasons support release when a defendant is housed at a correctional facility "affected or at imminent risk of being affected by an ongoing outbreak of infectious disease" or public health emergency as declared by the appropriate authorities, personal health risk factors increase the defendant's "risk of suffering severe medical complications or death" as a result of the disease or public health crisis, and the risk "cannot be adequately mitigated in a timely manner." U.S. Sent'g Guidelines Manual § 1B1.13(b)(1)(D). In May 2023, the federal government suspended the national state of emergency due to COVID-19. Nat'l Emergencies Act, Pub. L. No. 118-3, 137 Stat. 6 (2023). Thus, § 1B1.13(b)(1)(D) supports Defendant's argument to the extent he can show he is housed at a correctional facility "affected or at imminent risk of being affected by an ongoing outbreak of an infectious disease" and he is particularly susceptible.

Defendant argues his sarcoidosis constitutes an "extraordinary and compelling" circumstance because it places him at an unknown risk if he contracts COVID-19. A court will consider whether "an inmate shows both a particularized susceptibility to COVID-19 *and* a particularized risk of contracting the disease at his prison facility." United States v. Brown, 78 F.4th 122, 128 (4th Cir. 2023) (emphasis added) (quoting United States v. Hargrove, 30 F.4th 189 (4th Cir. 2022)).

Defendant fails to show a particularized susceptibility or risk of contracting COVID-19 because of his sarcoidosis. The CDC does not indicate individuals with sarcoidosis are more likely to become very sick from COVID-19. People with Certain Medical Conditions, Centers for Disease Control and Prevention (Apr. 15, 2024), https://www.cdc.gov/coronavirus/2019-

5

Case 3:17-cr-00134-FDW-SCR    Document 3575    Filed 07/29/24    Page 5 of 15

ncov/need-extra-precautions/people-with-medical-conditions.html. Additionally, Defendant has the first dose of the COVID-19 vaccine, (Doc. No. 3465, p. 59), and according to the CDC, vaccines are "highly effective in preventing the most severe outcomes from a COVID-19 infection." Benefits of Getting a COVID-19 Vaccine, Centers for Disease Control and Prevention (Sept. 22, 2023), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html. Further, Defendant's sarcoidosis has been in remission since January 21, 2022, and he indicated on May 31, 2022, "he has no concern" as it pertains to his sarcoidosis. (Doc. No. 3465, pp. 52, 74.)

Further, Defendant is not housed at a correctional facility "affected or at imminent risk of being affected" by a COVID-19 outbreak. Defendant was housed at USP Canaan at the time he filed his Motion, and he is presently housed at USP Canaan. See https://www.bop.gov/inmateloc/ (last visited July 17, 2024). USP Canaan presently reports zero active cases of COVID-19 and approximately fifty five percent of the inmate population is fully vaccinated against the virus. See https://www.bop.gov/about/statistics/statistic_inmate_covid19.jsp (last visited July 19, 2024). On this record, Defendant's health and alleged susceptibility to COVID-19 do not present extraordinary and compelling reasons warranting compassionate release.

Second, Defendant argues a sentence reduction is warranted, because he was a victim of abuse by two correction officers while housed at MDC Brooklyn during 2020 and 2021. Defendant asserts this constitutes an "extraordinary and compelling" reason for a sentence reduction. Defendant's argument is unsubstantiated.

Courts may grant a sentence reduction based on "physical abuse" that causes either: "[1] extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or [2] require[s] medical intervention such as surgery, hospitalization, or physical

rehabilitation." U.S. Sent'g Guidelines Manual § 1B1.1 cmt. n.1(M); see id. § 1B1.13(b)(4)(B). Further, pursuant to this provision, the alleged misconduct must be evidenced by a criminal conviction, "a finding or admission of liability in a civil case, or . . . administrative proceeding" unless the defendant faces "imminent danger." U.S. Sent'g Guidelines Manual § 1B1.13(b)(4)(B).

The record before the Court does not demonstrate Defendant was a victim of physical abuse causing either: "[1] extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or [2] require[ed] medical intervention such as surgery, hospitalization, or physical rehabilitation." See id. § 1B1.1 cmt. n.1(M). Defendant contends two correction officers at MDC Brooklyn in 2020 through 2021, bribed, coerced, framed, labeled him as a snitch, and placed a hit on his life. (Doc. No. 3553, pp. 7–8.) Specifically, Defendant asserts the correction officers coerced him to "secrete [sic] contraband in his rectum . . . causing hemorrhoids and psychological damage . . . internal bleeding as well." (Id.) But Defendant's medical records do not show he suffered from hemorrhoids or internal bleeding in or around the rectal area, nor any psychological damage in the years of 2020 or 2021. (See generally Doc. No. 3465.)

Further, Defendant asserts he was labeled as a snitch by the correction officers and therefore, his life is in danger. (Doc. No. 3545, p. 3.) However, Defendant fails to cite or substantiate *any* instances where he suffered physical abuse because he is a "snitch." On this record, Defendant's alleged abuse at the hands of correction officers remain unsubstantiated, therefore it fails to rise to the level of bodily injury contemplated by § 1B1.13(b)(4)(B). United States v. Curry, No. 3:16-cr-74-MOC-DSC, 2024 WL 203231, at *3 (W.D.N.C. Jan. 18, 2024) (finding defendant failed to corroborate his claim of Bureau of Prison officials retaliating against him, and therefore did not meet his burden to show circumstances warranting compassionate

7

release), appeal filed, United States v. Curry, (4th Cir. Apr. 17, 2024). Therefore, Defendant fails to present an extraordinary and compelling reason warranting a sentence reduction on this basis.

Third, Defendant argues thirty two years of incarceration and various incidents during this time amount to an "extraordinary and compelling" circumstance, warranting a sentence reduction because he is "psychologically and emotionally scarred." (See Doc. No. 3553, p. 9.) Defendant's argument is unpersuasive. The current policy statement permits the Court to find "extraordinary and compelling" reasons support release when: (1) a defendant "presents any other circumstance or combination of circumstances[;]" (2) considered alone or in conjunction with the reasons in paragraphs (1) through (4); that (3) are similar in nature to the reasons within paragraphs (1) through (4). U.S. Sent'g Guidelines Manual § 1B1.13(b)(5). Further, the Court may grant a sentence reduction if a defendant is "suffering from a serious physical . . . or cognitive impairment . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of the correctional facility and from which [defendant] is not expected to recover." Id. § 1B1.13(b)(1)(B).

Defendant argues the "abusive apparatus" of the prison system has caused him physical and psychological damage and this is an extraordinary and compelling circumstance. (See Doc. No. 3553, pp. 9–10.) Specifically, Defendant cites an undated attack by a K-9 dog, an undated slip and fall, and a 2015 mental illness diagnosis. The Court recognizes Defendant's hardships. However, the K-9 attack, slip and fall, and mental illness diagnosis fail to rise to the level of "serious" circumstances within § 1B1.13(b)(1)(B)(i). Additionally, Defendant's medical records as of May 9, 2023, indicate normal mental health posture, affect, and mood. (Doc. No. 3465, p. 5.) Further, there is no evidence in the record indicating serious impairments resulting from a K-9 attack or slip and fall. (See generally Doc. No. 3465.) See United States v. Young, No. 4:18

CR00017, 2024 WL 165773, at *1–2 (W.D. Va. Apr. 17, 2024) (finding defendant's time served, alleged rehabilitation, numerous health disorders, and COVID-19 do not constitute extraordinary and compelling circumstances pursuant to U.S. Sent'g Guidelines Manual § 1B1.13(b)(5)).

Defendant's allegations considered together, are not similar in nature to the other circumstances Defendant alleged based on paragraphs §§ 1B1.13(b)(1)(B) or (b)(4). Therefore, the circumstances as Defendant presents them, taken alone or together, fail to present "extraordinary or compelling" circumstances supporting release.

Fourth, Defendant contends if he were sentenced today pursuant to Amendment 821, to the U.S. Sentencing Guidelines, his criminal history category would be V not VI, and place him in the same category as Omari Rosero. See id. amend. 821 (Supp. to App. C pp. 234–6). The Court disagrees. Amendment 821 made two changes to chapter four of the Sentencing Guidelines pursuant to a defendants criminal history. See id. The Sentencing Commission made Part A and Part B, Subpart 1, of Amendment 821 retroactive, permitting eligible defendants to seek a discretionary sentence reduction under 18 U.S.C. § 3582(c)(2). Id.; see U.S. Sent'g Guidelines Manual § 1B1.10(d).

Part A of the amendment changes Sentencing Guidelines § 4A1.1 to remove the two status points previously assessed under § 4A1.1(d) for defendants who "committed any part of the instant offense . . . while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S. Sent'g Guidelines Manual amend. 821 (Supp. to App. C pp. 234–6). Instead, Defendants now earn one criminal history point if they committed the offense while under any criminal justice system sentence and otherwise score seven or more points. Id. Section 1B1.10(a)(1) of the Sentencing Guidelines permits a district court to reduce a defendant's sentence in any case in which a defendant is serving a term of imprisonment

9

and the guideline range for the defendant "has subsequently been lowered as a result" of a retroactive amendment to the Sentencing Guidelines. A defendant is not eligible for a sentence reduction if the retroactive amendment fails to "lower[ ] the defendant's applicable guideline range." Id. § 1B1.10(a)(2)(B).

Defendant is ineligible for a sentence reduction pursuant to Amendment 821. Defendant received two criminal history points for committing Count 1s while incarcerated. Pursuant to Amendment 821, he would receive one, not two, of those criminal history points because (1) he had seven or more points related to his prior criminal convictions; and (2) committed the instant offense while incarcerated. See id. amend. 821 (Supp. to App. C pp. 234–6); (Doc. No. 1941, p. 29) (indicating Defendant's subtotal criminal history score as 12 and a total criminal history score of 14 due to the two point enhancement as discussed above). Absent the additional criminal history point, Defendant's total criminal history score is reduced from 14 to 13. With 13 criminal history points, Defendant's criminal history category remains as VI. See U.S. Sent'g Guidelines Manual ch. 5, part A. Therefore, because Defendant's criminal history category remains unchanged by Amendment 821, he is not eligible for a sentence reduction under Amendment 821 and 18 U.S.C. § 3582(c)(2).

### B. Section 3553 Factors

Even if Defendant demonstrated extraordinary and compelling reasons for compassionate release, the applicable § 3553(a) factors fail to support a reduction in Defendant's sentence. The nature and circumstances of the offense, Defendant's criminal history, and Defendant's characteristics weigh against a sentence reduction. Further, the sentence disparity Defendant alleges is misguided.

Defendant's behavior while incarcerated fails to indicate he is adequately deterred, and the Court concludes he would pose a threat to the public if released. The purpose of 18 U.S.C. § 3553(a)(6) is for the sentence imposed to "provide just punishment," "afford adequate deterrence," and "protect the public." The nature and circumstances of the instant offense taken together with Defendant's criminal history, his disciplinary infractions, and Defendant's likelihood of recidivism support him serving his sentence as imposed.

First, the nature and circumstances of the instant offense weigh against a sentence reduction. Defendant was named fifth in the seventy two count Indictment pursuant to federal racketeering conspiracy charges for many UBN members. (See generally Doc. No. 1941, pp. 3–13.) Defendant held the high ranking position of "Worldwide High" and "Acting Godfather" within the UBN hood referred to as the Nine Trey Gangsters Hood. (Id., p. 16.) According to the Indictment, between 2010 and 2018, Defendant engaged in the following acts while incarcerated: thirteen incidents of receiving gang dues from a UBN member; three instances of conducting or discussing UBN meetings; and two incidents of writing letters to a UBN member to discuss gang business. (See generally Doc. No. 1241, pp. 21–4, 31, 34–5, 37–40, 42, 66). See also United States v. Moore, No. 3:17-cr-293-MOC-DCK-1, 2020 WL 6076318, at *4 (W.D.N.C. Oct. 15, 2020) (determining the defendant's illegal acts while incarcerated in federal prison weigh against early release pursuant to § 3553(a)(6) factors).

Accordingly, the nature and circumstances of Defendant's crime were serious in both his leadership role in the offense and the fact his actions for the instant charge were all taken *while incarcerated*, indicating Defendant is not "adequate[ly] deter[ed]" by incarceration. United States v. Maldonado-Guillen, No. 5:14-CR-00072-KDB-DSC, 2021 WL 2593807, at *7 (W.D.N.C. June

24, 2021) (determining release of defendant would not provide proper punishment or deterrence for defendant's conduct as a "leader" in a drug-trafficking conspiracy).

Second, Defendant's fourteen disciplinary infractions occurred while incarcerated for the instant offense, once again indicating Defendant is not deterred by incarceration, and similarly, remains a threat to the public. (Doc. No. 3464-3.) The Government notes Defendant has incurred new disciplinary infractions since filing his Motion. (Id., p. 10.) Beyond his convictions, Defendant has approximately thirty additional arrests for crimes ranging from attempted murder to rape in the first degree. (Doc. No. 1941, pp. 26–9.) Third, as of October 29, 2021, the Bureau of Prison categorizes Defendant as "High Risk Recidivism Level." (Doc. No. 3268-1, p. 22); see also United States v. Dowdle, No. 1:20-cr-00069-MR-WCM, 2023 WL 3669555, at *3 (W.D.N.C. May 25, 2023) (finding the Bureau of Prisons' categorization of defendant as a "High Risk Level Inmate" weighs in favor of defendant serving his sentence as originally imposed).

Fourth, Defendant's criminal history score of 14 indicates the extensiveness of his criminal history, which places him in criminal history category VI. Defendant received the statutory maximum sentence of 240 months, a sentence below the advisory guideline range of 360 months to life based on his total offense level of 38 and his criminal history category VI.[3] Accordingly, releasing Defendant early would not promote respect for the law. United States v. Minor, No. 3:17-cr-224-MOC-1, 2021 WL 5567420, at *3 (W.D.N.C. Nov. 29, 2021) (finding a sentence reduction through compassionate release fails to promote respect for the law where defendant received a sentence below the advisory guideline range).

---

[3] See U.S. Sent'g Guidelines Manual § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.")

12

Lastly, Defendant's completion of ten educational courses, assertions indicating he is an advocate for peace and nonviolence, disownment of the UBN, and four inmate support letters, fail to outweigh the nature of Defendant's instant offense and his criminal history. (See Doc. Nos. 3268, 3545, 3553.) Therefore, the nature and characteristics the instant offense, Defendant's criminal history, and Defendant's characteristics do not weigh in favor of a sentence reduction pursuant to § 3553(a).

Defendant argues the Court should reduce his sentence to avoid unwarranted sentence disparity with his codefendant Omari Rosero. (Doc. No. 3553, p. 4.) The Court disagrees.

A central purpose of federal sentencing is to "provide just punishment." 18 U.S.C. § 3553(a); see also United States v. Tate, No. 3:01-cr-00185-FDW, 2022 WL 1085002, at *5 (W.D.N.C. Apr. 11, 2022). Section 3553(a)(6) states the Court must consider "sentence disparities among defendants with similar records who have been found guilty of similar conduct." Further, the Supreme Court states "the Guidelines should be the starting point and the initial benchmark" for all sentencing proceedings. Gall v. United States, 552 U.S. 38, 49 (2007).

On review of this record, Defendant's conduct and other relevant evidence fail to indicate Defendant is "similarly situated" to codefendant Omari Rosero. See Tate, 2022 WL 1085002, at *5. First, Defendant is correct when he states both himself and Rosero received a four point leadership enhancement. (See Doc. No. 3553, p. 4.) Second, both Defendant and Rosero were convicted under the same statute providing a statutory maximum sentence of twenty years. However, the similarities stop there.

First, Defendant proceeded to trial, while Rosero pled guilty pursuant to a plea agreement. (See Doc. No. 1941, pp. 3, 10.) Second, Defendant's criminal history category is VI while Rosero's criminal history category is V. Third, Defendant's base offense level for Count 1s was

30 and Rosero's base offense level for his Count 1 was 19. (Id., p. 23.) Fourth, Defendant's total offense level was 38, and Rosero's total offense level was 20.

Despite both Defendant and Rosero being convicted under the same statute, and receiving the same four point leadership enhancement, the disparity in total offense level and criminal history category provided different advisory guideline ranges. A total offense level of 38 warrants a guideline imprisonment range of 360 years to life, while a total offense level of 20 warrants a guideline imprisonment range of 63 months to 78 months. See U.S. Sent'g Guidelines Manual ch. 5, part A.

Therefore, Defendant and Rosero are not similarly situated. Further, Defendant maintains a different criminal history and characteristics as compared to Rosero. These differences resulted in a different sentencing recommendation for each, despite the same statutory maximum applying under § 1962(d). Thus, to promote respect for the law, deter Defendant, prevent additional crimes by Defendant, and provide appropriate punishment, the Court finds the § 3553(a) factors weigh against a reduction of Defendant's sentence.

For the forgoing reasons, Defendant fails to assert any extraordinary and compelling reasons for compassionate release and the § 3553(a) factors do not support a reduction of Defendant's sentence.

IV. CONCLUSION

IT IS, THEREFORE, ORDERED that Defendant's Motion for Compassionate Release, (Doc. No. 3268), is DENIED.

**IT IS SO ORDERED**.

Signed: July 29, 2024

Frank D. Whitney
United States District Judge

15

Case 3:17-cr-00134-FDW-SCR   Document 3575   Filed 07/29/24   Page 15 of 15